**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LINDSEY GULDEN, *et al.*, | |
| Plaintiffs, | Civil Action No. 24-7381 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| EXXON MOBIL CORPORATION, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court on two separate motions. The first is Defendant Exxon Mobil Corporation's ("Defendant") Motion to Dismiss Plaintiffs' Lindsey Gulden ("Gulden") and Damian Burch ("Burch") (collectively, "Plaintiffs") Complaint for Improper Venue or, alternatively, to Transfer Venue to the Southern District of Texas. (ECF No. 6.) The second is Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure[1] 12(b)(6). (ECF No. 7.) Plaintiffs opposed the motions (ECF Nos. 14, 15), and Defendant replied (ECF Nos. 17, 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated below, the Court grants Defendant's Motion to Transfer Venue to the Southern District of Texas and denies its Motion to Dismiss under Rule 12(b)(6) as moot.

---

[1] Unless otherwise stated, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

I.    **BACKGROUND**

A.    **Factual Background**[2]

The instant dispute stems from a whistleblower complaint that Plaintiffs filed with the Secretary of Labor (the "Secretary"), which expressed concerns that Defendant overstated its earnings. (*See generally* Compl., ECF No. 1.)

Plaintiffs are former employees of Defendant. (*Id.* ¶¶ 16-17.) Gulden worked for ExxonMobil Upstream Integrated Solutions Company, an affiliate of Defendant, which is a Delaware corporation with its principal place of business in Texas. (Decl. of Beth E. Casteel ("Casteel Decl.") ¶ 2, ECF No. 6-3; *see also* Compl. ¶ 16.) Burch worked for ExxonMobil Global Projects, an affiliate of Defendant, which is a Delaware Corporation with its principal place of business in Texas. (Casteel Decl. ¶ 4; *see also* Compl. ¶ 17.) Gulden is a citizen of Massachusetts (Compl. ¶ 9), and Burch is a citizen of Texas (*id.* ¶ 10).

While employed with Defendant, Plaintiffs objected to Defendant's proposed Delaware Basin oil project for 2019 because "there was no objective, verifiable support for [Defendant]'s production estimates regarding the Delaware Basin wells and the underlying learning curve being utilized." (*Id.* ¶¶ 28-29, 30.) Gulden forwarded the results of her study, which supported Burch's objections, to both Burch and the supervisor of the Delaware Development Team, Ozgur Ozen. (*Id.* ¶ 31.) Plaintiffs submitted various internal complaints and forwarded e-mail messages corroborating their assertions to Defendant's Human Resources department. (*Id.* ¶¶ 36-37, 39.)

On October 23, 2019, Delaware Basin's Development Manager, Melissa Bond ("Bond"), held a Delaware Basin-wide meeting, in which Burch was asked to present the Delaware Basin

---

[2] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

drilling plan based on the learning curve assumptions mandated by Bond. (*Id.* ¶ 32.) Among those present at the meeting were the individuals who would conduct the actual drilling. (*Id.*) During Burch's presentation, when she described the drilling speed and drilling learning curve assumptions used to generate the plan, an individual in the audience stated, "[t]hat is impossible." (*Id.*) But, before Burch could respond, Bond interjected and "told the audience that . . . Burch must have made a mistake and that . . . Burch, a mathematical modeling expert, did not understand mathematical modeling." (*Id.*) Still, Bond did not modify the Delaware Basin project model. (*Id.* ¶ 35.) Plaintiffs' internal complaints eventually triggered an internal investigation. (*Id.* ¶ 40.)

On September 13, 2020, the Wall Street Journal published an article citing "unnamed current and former employees" and alleged that Defendant "overestimate[d] how quickly it could drill" and thereby inflated the Delaware Basin's estimated output by $10 billion. (*Id.* ¶ 42.) The allegations in the article match the allegations made by Plaintiffs in their internal complaints. (*Id.* ¶ 42.) Within three months, both Plaintiffs were terminated from their positions. (*See id.* ¶¶ 49-50.)

Following their dismissal, Plaintiffs filed a whistleblower complaint under the Sarbanes-Oxley Act of 2002 ("SOX"). (*Id.* ¶ 1.) On February 10, 2021, Plaintiffs filed a complaint with the Secretary through the Occupational Safety and Health Administration ("OSHA"). (*Id.* ¶ 56.) OSHA completed an investigation at the direction of the Secretary. (*See id.* ¶ 65.) On October 6, 2022, following the investigation, the Secretary issued its final determination and preliminary order concerning Plaintiffs' SOX claims, including an order instructing Plaintiffs' immediate reinstatement to their former positions. (*Id.* ¶¶ 63-64.) Defendant chose to ignore the order to reinstate Plaintiffs' employment and appealed the case to the Office of Administrative Law Judges of the Department of Labor. (*Id.* ¶¶ 5, 67, 71.) Plaintiffs now ask this Court to enforce

the preliminary reinstatement order while the underlying dispute proceeds through the agency review process. (*Id.* ¶ 72.)

### B.    Procedural History

Plaintiffs filed this action on June 28, 2024, against Defendant, alleging retaliation in violation of SOX, 18 U.S.C. § 1514A. (*See generally id.*) On October 14, 2024, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(3) or, alternatively, to Transfer Venue to the Southern District of Texas (ECF No. 6) and also filed a Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 7). On November 18, 2024, Plaintiffs opposed both motions (ECF Nos. 14, 15) and on November 25, 2024, Defendant replied (ECF Nos. 17, 18). The motions are now ripe for review.

## II.    <u>LEGAL STANDARDS</u>

### A.    Motion to Dismiss Under Rule 12(b)(3)

Generally, "venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum." *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 710 (1972). A party believing it has been sued in an improper federal venue may move to dismiss or transfer venue under Rule 12(b)(3). *See* 28 U.S.C. § 1406(a) (stating that a court granting a Rule 12(b)(3) motion based on improper venue "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"). When such a motion is filed, the court must determine whether venue is proper in accordance with the applicable statutes. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Generally, "it is not necessary for the plaintiff to include allegations in his complaint showing that venue is proper." *Great W. Mining & Min. Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86-87 (3d Cir. 2011) (citation omitted). The court will accept any venue-related allegations in

the complaint as true unless they are contradicted by the defendant's evidence. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). In addition, the court may consider affidavits submitted by the plaintiff. *See id.* at 161.

**B.      Motion to Transfer Under 28 U.S.C. § 1404**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2). In deciding § 1404(a) ("Section 1404(a)") motions, "courts have not limited their consideration to the three enumerated factors in Section 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and . . . [will] consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotation and citation omitted).

To that end, courts consider both public and private interests. *Id.* Private interests include the plaintiff's choice of venue, defendant's preference, where the claim arose, convenience of the witnesses, and the extent to which records or other documentary evidence would be available for production. *Id.* Public interests include the enforceability of any judgment; "practical considerations that could make the trial easy, expeditious or inexpensive[;]" relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and "familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80. A plaintiff's choice of forum is accorded less weight when the

selected forum is not the plaintiff's home forum. *LG Elecs. Inc. v. First Int'l Comput.*, 138 F. Supp. 2d 574, 589 (D.N.J. 2001) (citation omitted).

### C.    Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-7213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). While Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must therefore contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips*, 515 F.3d at 234 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

III.    **DISCUSSION**

Since the motion to dismiss for improper venue, or alternatively, to transfer venue would counsel in favor of denying and/or deferring the motion to dismiss for failure to state a claim, the Court will address it first. *See, e.g.*, *Zeikos Inc. v. Walgreen Co.*, No. 21-19993, 2023 WL 239957, at *7 (D.N.J. Jan. 18, 2023) (deferring motion to dismiss to transferee court); *see also Dinkins v. Mayorkas*, No. 22-1109, 2023 WL 8232670, at *3 (D.N.J. Nov. 27, 2023) (denying Rule 12(b)(6) motion without prejudice and providing the defendants the right to raise the motion again in the transferee court).

A.    **Motion to Dismiss for Improper Venue or, Alternatively, to Transfer Venue**

Defendant first moves to dismiss for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a) ("Section 1406(a)") or, alternatively, to transfer venue to the Southern District of Texas under Section 1404(a) or 1406(a). (*See generally* Def.'s Moving Br., ECF No. 6-1.) In its motion, Defendant argues that venue in New Jersey is improper under SOX's venue provision, 18 U.S.C. § 1514A(b)(1)(B). (*Id.* at 5-10.) Plaintiffs, on the other hand, maintain that venue is proper in New Jersey and that Defendant waived its venue objection by litigating a related matter in this District.[3] (Pls.' Opp'n Br. 2-5.)

A federal district court can transfer a civil case from one district to another. *See Jumara*, 55 F.3d at 878. A court may do so under Section 1404(a) or 1406(a). *See id.* On the one hand, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). On the other hand, Section 1406(a) provides that

---

[3] Plaintiffs' argument concerning Defendant's waiver of a venue objection pertains solely to a Section 1406(a) analysis. (*See generally* Pls.' Opp'n Br, ECF No. 15.)

"[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

With these two standards in mind, the next question is: when does the court conduct a Section 1404(a) versus a Section 1406(a) analysis? If venue *is proper* in the court where a case is brought, the court decides whether to transfer the case in light of the standards laid out in Section 1404(a). *See Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007). If, however, venue *is not proper* in the court where a case is brought, the court decides whether to transfer the case in light of the standards laid out in Section 1406(a). *See id.* Because the legal analysis differs based on whether Section 1404(a) or 1406(a) applies, the Court must determine whether the District of New Jersey is a proper venue for this matter. Before doing so, the Court must first address Defendant's argument concerning SOX's venue provision because it may directly affect whether venue is proper in the District of New Jersey.

### 1.  *Motion to Dismiss for Improper Venue Under Rule 12(b)(3)—SOX*

Defendant argues that the case should be dismissed or transferred under Rule 12(b)(3) because venue is improper in New Jersey based on SOX. (*See generally* Def.'s Moving Br.) More specifically, Defendant argues that SOX has an exclusive venue provision that supersedes the general venue provisions in 28 U.S.C. § 1391(b) ("Section 1391(b)"). (*See id.* at 3-4.) Defendant relies on dicta in a First Circuit case explaining that, under SOX, "the appropriate court is one in the jurisdiction of which the whistleblower violation occurred or the complainant resided." (*Id.* at 4 (quoting *Carnero v. Boston Sci. Corp.*, 433 F.3d 1, 17 (1st Cir. 2006)).) Defendant thus argues that since the purported violation did not occur in New Jersey, and the complainants did not reside

in New Jersey, venue is improper in New Jersey. (*Id.*) Plaintiffs, on the other hand, argue that SOX does not supersede the general venue provisions outlined in Section 1391(b). (Pls.' Opp'n Br. 7.)

Under SOX, any person involved in a SOX whistleblower-protected activity action must bring suit "in *the appropriate district court* of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." 18 U.S.C. § 1514A(b)(1)(B) (emphasis added). SOX, however, does not define "the appropriate district court." *See generally* 18 U.S.C. § 1514A. So, Defendant urges this Court to accept the First Circuit's interpretation of "the appropriate [district] court . . . [being the] one in the jurisdiction of which the whistleblower violation occurred or the complainant resided." (Def.'s Moving Br. 4 (quoting *Carnero*, 433 F.3d at 17).) The Court declines to do so.[4]

Here, the Court finds that SOX does not have an exclusive venue provision that supersedes the general venue provisions in Section 1391(b). Courts in the Third Circuit and throughout the country have implicitly rejected Defendant's argument when evaluating whether venue is proper under Section 1391(b) in SOX cases. *See Vuoncino v. Forterra, Inc.*, No. 18-2437, 2021 WL 1589356, at *7 (D.N.J. Apr. 22, 2021) (analyzing venue in a SOX case under Section 1391(b));

---

[4] Plaintiffs' reliance on the First Circuit's decision in *Carnero* is misplaced. In *Carnero*, the plaintiff was a citizen of Argentina who worked for Argentinian and Brazilian subsidiaries of a Delaware corporation. *Carnero*, 433 F.3d at 2-3. The plaintiff's employment agreement provided that the laws of Argentina would govern. *Id.* at 2. The plaintiff argued that application of the SOX anti-retaliation provision would be domestic because "he maintained contact with" the U.S. parent corporation, "travel[ed] frequently to Massachusetts to meet with supervisors there," and because the parent company's Massachusetts employees exercised "extensive and continuous control . . . over his work . . . in Latin America." *Id.* at 3. The First Circuit found these domestic contacts insufficient. *See generally id.* It held that because the plaintiff "was a resident of Argentina and Brazil directly employed by foreign companies operating in those countries," application of the SOX whistleblower protections would be extraterritorial. *Id.* at 18 & n.17. That said, the issue before the First Circuit in *Carnero* was not whether SOX provided an exclusive venue provision that would supersede the general venue provision in Section 1391(b); rather, it was whether SOX protections would be extraterritorial. *See generally id.*

*see also Hanna v. WCI Cmtys, Inc.*, 348 F. Supp. 2d 1322, 1325 (S.D. Fla. 2004) (analyzing venue in a SOX case under Section 1391(b)). This is because the general venue provisions outlined in Section 1391(b) only apply in cases where a more specific venue provision does not apply. *Cf., e.g.*, 28 U.S.C. § 1400 (identifying proper venue for copyright and patent suits). To that end, if SOX provided an exclusive specific venue provision, courts could not and would not evaluate whether the general venue provisions apply in SOX cases. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 n.2 (2013) (explaining that Section 1391(b) governs where a more specific venue provision does not apply); *see also Vincent v. Woods Servs., Inc.*, No. 08-1007, 2008 WL 939190, at *1 (D.N.J. Apr. 4, 2008) ("Title VII venue provision is mandatory and well-settled, thereby rendering other general venue statutes inapplicable.").

The Court, therefore, rejects Defendant's argument that SOX supplies its own venue provision and that venue is only proper where the purported violation occurred or where the complainant resided.[5] Accordingly, the Court analyzes venue according to the general venue provisions set forth in Section 1391(b).

---

[5] Venue is thus not improper based on SOX.

2. ***Motion to Dismiss for Improper Venue Under Rule 12(b)(3)—Section 1391(b)*** [6]

Having found that Section 1391(b) controls this Court's venue analysis, this Court now discerns whether venue is proper in the District of New Jersey.

This question—whether venue is "wrong" or "improper"—is determinative of whether the Court proceeds to a transfer analysis under Section 1404(a) or 1406(a). *See Jumara*, 55 F.3d at 878. Specifically, Section 1391(b) provides:

> [a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). If a case falls within one of the districts enumerated in Section 1391(b), venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under Section 1406(a). *Atl. Marine Const. Co.*, 571 U.S. at 50. For purposes of venue, a corporate defendant resides in any forum in which it is subject to personal jurisdiction for the action in question. *See* 28 U.S.C. § 1391(c)(2); *Palladino v. Leavitt*, No. 22-6756, 2023 WL 6366095, at *6 (D.N.J. Sept. 29, 2023) ("For purposes of determining proper venue, a corporate defendant resides 'in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]'" (citing 28 U.S.C. § 1391(c)(2))).

---

[6] Defendant does not argue that venue is improper under Section 1391(b). (*See generally* Def.'s Moving Br.) Rather, Defendant argues that venue is improper based solely on SOX's "venue provision." (*See generally id.*) As such, the Court finds that Defendant waived any argument of improper venue based on Section 1391(b). *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991).

In the Complaint, Plaintiffs allege that "venue is proper in this [D]istrict pursuant to 28 U.S.C. § 1391(b)(1)." (Compl. ¶ 8.) Here, the Court finds that venue is proper in the District of New Jersey, the transferor district, because the parties do not contest it.[7] By filing suit in the District of New Jersey, Plaintiff consented to venue here. *See, e.g.*, *Nowak Dental Supplies, Inc. v. Dentsply Int'l, Inc.*, No. 07-1799, 2008 WL 11363797, at *1 n.3 (M.D. Pa. Aug. 4, 2008). In addition, Defendant waived any objection to venue—under Section 1391(b)—by failing to object to it in its initial Motion to Dismiss. (*See generally* Def.'s Moving Br.); *see Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062, at *4 (D.N.J. Aug. 27, 2018). As such, the Court finds that venue is proper in this District and thus Defendant's motion to transfer must be analyzed under Section 1404(a).

---

[7] Defendant did not expressly raise lack of personal jurisdiction in its motions, including in the motion to dismiss for improper venue. Indeed, personal jurisdiction, as well as venue, may be waived. *See* Fed. R. Civ. P. 12(h)(1) (providing that a party's failure to challenge personal jurisdiction in certain motions, including a motion asserting improper venue, or in responsive pleadings, effects a waiver of the defense of lack of personal jurisdiction). Because Defendant failed to raise lack of personal jurisdiction in its initial Rule 12 motion, the Court finds that Defendant has waived personal jurisdiction. *Natarajan v. CLS Bank Int'l*, No. 12-6479, 2014 WL 1745024, at *2 n.4 (D.N.J. Apr. 30, 2014) (citations omitted) (finding that defendants waived personal jurisdiction by failing to raise it until they filed their reply brief in support of their motion to change venue); *Dagostino v. Bally's Las Vegas*, No. 11-2618, 2011 WL 5599859, at *2 (D.N.J. Nov. 17, 2011) ("Because the [d]efendants have failed to object to personal jurisdiction, they concede that they are subject to this [c]ourt's jurisdiction."). Venue is, therefore, proper in New Jersey because Defendant is subject to personal jurisdiction in this forum, which, as a corporate defendant, means that it meets the residency requirements for purposes of venue. *See Dagostino*, 2011 WL 5599859, at *2 (recognizing that venue is proper in the forum where a corporate defendant failed to object to personal jurisdiction in its initial Rule 12 response, therefore waiving it and meeting the requirements for venue pursuant to 28 U.S.C. § 1391(c)(2) and Section 1391(b)(1)).

3.    *Motion to Transfer Venue Under Section 1404(a)*

Having determined that venue is proper in this District, the Court must next conduct a transfer analysis under Section 1404(a). *See Lafferty*, 495 F.3d at 76 (explaining that if venue is proper where the case is brought, then the court must conduct its transfer analysis pursuant to Section 1404(a)).

Under Section 1404(a), in assessing a potential transfer where venue is proper, the Court performs its analysis in two steps. *See Interlink Prods. Int'l, Inc. v. Crowfoot*, No. 20-7654, 2020 WL 6707946, at *6 (D.N.J. Nov. 16, 2020) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). First, the Court determines whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance. *See Jumara*, 55 F.3d at 879 (quoting 28 U.S.C. § 1404(a)). Second, the Court determines "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum[.]" *Id.* (citation omitted).

a.    **Whether the Action Could have been Brought in the Southern District of Texas.**

The Court begins with the first step—whether the case could have been brought in the Southern District of Texas. This inquiry asks whether personal jurisdiction and venue would be proper in the transferee forum. *See generally Hoffman v. Blaski*, 363 U.S. 335, 344 (1960).

"A federal court can exercise personal jurisdiction to the same extent as the state courts of the state where the federal court sits." *Rose v. Ferrari N. Am., Inc.*, No. 21-20772, 2023 WL 4914313, at *1 (D.N.J. July 31, 2023); *see* Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A court may "exercise personal jurisdiction over a nonresident defendant" if: (1) the state's long-arm statute confers jurisdiction; and (2) asserting jurisdiction is consistent

13

with the Due Process Clause of the Fourteenth Amendment. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). "Because Texas' long-arm statute has been interpreted to extend to the limits of due process," the Court need only determine whether asserting jurisdiction in Texas over Defendant would violate the Due Process Clause. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990)).

A court is authorized to exercise two types of personal jurisdiction: general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction applies when an individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'" (quoting *Daimler AG*, 571 U.S. at 137)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Specific jurisdiction, on the other hand, allows a court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).

Here, the Court finds that courts in Texas have personal jurisdiction over Defendant. Defendant is a corporation with its principal place of business in Texas (Casteel Decl. ¶ 2), which is located within the geographic area covered by the Southern District of Texas. As such, it is "at home" in Texas and subject to personal jurisdiction in its federal courts. *See Daimler AG*, 571 U.S. at 137 (holding, in the context of discussing the paradigmatic basis for general personal jurisdiction

over a corporation, that a corporation is "at home" in its state of incorporation and the place where it maintains its principal place of business). For the same reason, venue would be properly laid in the Southern District of Texas according to Section 1391(b), which provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. 1391(b)(1). Defendant, the only party against which this suit has been filed, resides in Texas, and it is subject to personal jurisdiction within that state. *See* 28 U.S.C. § 1391(c) (providing that a defendant "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ."). Accordingly, the Southern District of Texas is an appropriate transferee forum.[8]

> **b.    Whether a Transfer to the Southern District of Texas Would be in the Interest of Justice.**

Having found that venue is proper in the Southern District of Texas, the Court moves on to step two—whether a transfer to the Southern District of Texas would be in the interest of justice. *See* 28 U.S.C. § 1404(a).

Courts consider various private and public interests in deciding whether transfer is appropriate. *Jumara*, 55 F.3d at 879. The private factors include: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the

---

[8] If that were not enough, venue would also be proper in Texas under Section 1391(b)(2), which provides that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. 1391(b)(2). Here, Plaintiffs were based in Texas throughout their employment, performed their core responsibilities for ExxonMobil affiliates in Texas, and raised their alleged whistleblower concerns internally while in Texas. (Def.'s Moving Br. 2-3; Compl. ¶¶ 16-17, 32-33, 36.) The Complaint is devoid of any factual allegations showing that a substantial part of the events or omissions giving rise to their SOX retaliation claims occurred in New Jersey. (Compl. ¶¶ 11, 32-37.) For these reasons, the Court also finds that venue is proper in the Southern District of Texas.

convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent they would be unavailable in a particular forum; and (6) the location of evidence to the extent it cannot be produced in a particular forum. *Id.* The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80.

These factors are not exclusive. *See id.* ("[C]ourts have considered many variants of the private and public interests."). And courts are vested with broad discretion to determine on an "individualized, case-by-case basis" whether the factors weigh in favor of transfer. *See id.* at 883; *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30-31 (1988); *U.S. Fire Ins. Co. v. World Trucking, Inc.*, No. 07-1153, 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008). Defendant—as the movant—bears the burden of establishing the need for transfer, and "unless the balance of convenience of the parties is strongly in favor of [D]efendant, . . . [P]laintiff[s]'[] choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted). The Court will examine each relevant factor in turn, beginning with the private factors.

### i. Private Interest Factors

The Court begins with the first factor—a plaintiff's forum choice. A plaintiff's forum choice generally should not be lightly disturbed. *See Jumara*, 55 F.3d at 879. Although a plaintiff's choice of forum is generally given deference, "[w]hen the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." *Cancer Genetics, Inc.*

16

*v. Kreatech Biotech., B.V.*, No. 07-273, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007); *Rowles v. Hammermill Paper Co.*, 689 F. Supp. 494, 496 (E.D. Pa. 1988) (explaining that "[p]laintiff's choice of forum merits less deference when none of the conduct complained of occurred in plaintiff's selected forum"). Here, this is exactly the case. The Complaint stems from a whistleblower action covered under SOX from Plaintiffs' place of employment in Texas. (*See generally* Compl.) The only allegation in the Complaint that seemingly connects their complained-of-conduct to New Jersey is that Defendant operates a business in New Jersey where "Plaintiffs would at times work." (*Id.* ¶ 11.) Plaintiffs, however, do not allege that any conduct which gave rise to the whistleblower action occurred while working at that facility. (*See generally id.*) In sum, the first factor, the Plaintiffs' choice of forum, is, as always, entitled to some weight. *See Jumara*, 55 F.3d at 879. But here, for the reasons set out above, Plaintiffs' choice of forum is entitled to less deference because none of the conduct complained of occurred in New Jersey.

The second factor is Defendant's forum preference. Defendant's preferred choice is the Southern District of Texas (*see generally* Def.'s Moving Br.), which is where its principal place of business is located (Casteel Decl. ¶ 2). Though "[D]efendant's preference is usually 'entitled to considerably less weight than Plaintiff[s]'. . .' *EVCO Tech. & Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005), the minimal deference owed [Plaintiffs'] choice tips the scales slightly in [Defendant's] favor." *Shelton v. Freedom Forever, L.L.C.*, No. 24-4333, 2025 WL 693249, at *3 (E.D. Pa. Mar. 4, 2025).

The third factor is whether the claim arose in the proposed transferee district—the Southern District of Texas. It did. Here, and as articulated for the first factor, the center of gravity lies in Texas. That is, the underlying dispute arises out of a whistleblower action, which occurred at Plaintiffs' place of employment in Texas. (*See generally* Compl.) Plaintiffs fail to allege any facts

supporting the contention that the underlying dispute is meaningfully connected to New Jersey. In any event, to the extent Plaintiffs allege that they "would at times" work in New Jersey, the fact that Plaintiffs were domiciled in Texas during the relevant period of their employment casts doubt on how extensive their work in New Jersey could have been. Accordingly, this factor favors transfer. *See Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-8978, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022) ("The inquiry [for the third factor] hinges on 'which forum contains the center of gravity of the dispute, its events, and transactions.'"); *Snack Joint L.L.C. v. OCM Grp. USA, NJ, Inc.*, No. 21-818, 2021 WL 4077583, at *8 (D.N.J. Sept. 8, 2021) ("The third factor 'weighs in favor of transfer to the [proposed transferee district forum] where the majority part of events and omissions from which Plaintiff[s]'[] claims arise, took place.'").

The fourth factor is the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Gulden is a citizen of Massachusetts (Compl. ¶ 9), and Burch is a citizen of Texas (*id.* ¶ 10). Defendant has its principal place of business in Texas. (Casteel Decl. ¶ 2.) Plaintiffs nonetheless argue "that a plane ride from Boston, Massachusetts, where . . . Gulden resides . . . , to New Jersey is much shorter than that from Boston to Houston, Texas." (Pls.' Opp'n Br. 13.) This, however, fails to account for the inconvenience to Defendant and the distance for Burch. Nonetheless, because Plaintiffs do not represent that this inconvenience would preclude them from litigating in Texas, the Court finds this factor neutral. *See Koeller v. Pilot Travel Ctrs., LLC*, No. 22-2270, 2023 WL 3250512, at *4 (D.N.J. May 4, 2023) (finding factor neutral because although "it would be more convenient to litigate in their home state" plaintiffs provided "no specific inconvenience that would preclude them from litigating in [the proposed transferee district forum]"); *Denmark v. Pilot Travel Ctrs., LLC*, No. 18-15028, 2019 WL 2353644, at *5 (D.N.J. June 4, 2019) (finding factor neutral because plaintiffs

"do not represent that they are financially incapable of incurring any potential cost increase or that they are physically incapable of traveling to [the proposed transferee district forum]").

The fifth factor provides that the convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Plaintiffs argue that Defendant's declaration identifying potential witnesses and their out-of-state residence is insufficient to establish those witnesses' unavailability. (Pls.' Opp'n Br. 13-14.) Courts in this district, however, routinely weigh the unavailability of witnesses based upon the identification of their name or position and their stated or implied residence in another state. *See, e.g.*, *Denmark*, 2019 WL 2353644, at *5 (weighing factor and noting that defendant's employees are "potential witnesses [who] presumably reside in South Carolina and, therefore, are outside the subpoena power of this [c]ourt"); *Koeller*, 2023 WL 3250512, at *2 (same). Defendant represents that "each individual with knowledge of relevant facts in this matter is or was an employee of ExxonMobil."[9] (Casteel Decl. ¶¶ 8-9.) Defendant further represents that "[t]hree of those persons are former employees and are outside of the subpoena power of the . . . District of New Jersey." (*Id.*) As such, the Court finds that this factor weighs slightly in favor of transfer.

The final private interest factor—the location of the evidence—is neutral. Defendant asserts that "all of the relevant records were created in Texas[,] and the custodians of those records reside in Texas." (Def.'s Moving Br. 9.) But Defendant has not explained why its records are not easily transferable to this District. *Shelton*, 2025 WL 693249, at *4 (finding the availability of

---

[9] Defendant contends that Plaintiffs "in the initial disclosures filed in the OALJ proceeding, [] listed ten persons (other than themselves) as having knowledge of relevant information," who all reside in Texas. (Def.'s Moving Br. 8 (citing Casteel Decl. ¶ 8).) Further, "Defendant listed ten persons (other than Plaintiffs) as having knowledge of relevant information[,]" who all resided in Texas during the time relevant to the dispute. (*Id.* (citing Casteel Decl. ¶¶ 8-9).)

documents factor neutral where the defendant failed to show why the evidence could not be easily transferred). Moreover, "[t]he technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (citation omitted). Accordingly, this factor is neutral.

### ii.    *Public Interest Factors*

The Court next turns to the six public interest factors. *See Jumara*, 55 F.3d at 879-80. The public interest factors ask the Court to consider "where litigation can proceed in the most efficient and inexpensive fashion." *Petroleum Serv. Co. v. Santie's Wholesale Oil Co.*, No. 23-1500, 2024 WL 816619, at *6 (M.D. Pa. Feb. 27, 2024) (quoting *In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *6 (E.D. Pa. Dec. 28, 2006)).

Courts throughout this Circuit have routinely acknowledged that factors one, five, and six are neutral when the cause of action is a matter of federal law. *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 679 (E.D. Pa. 2019) (explaining that factors one, five, and six are neutral when the cause of action at issue arises under federal law); *see also Bayer Pharma AG v. Watson Lab's, Inc.*, No. 14-1804, 2014 WL 2516412, at *8-10 (D.N.J. June 2, 2014). This leaves the Court with public interest factors two through four.

The Court begins with the second public interest factor—practical considerations. "[P]ractical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive." *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *7 (D.N.J. Sept. 25, 2012). Here, Plaintiffs are not residents of New Jersey.[10] (*See*

---

[10] The practical considerations, however, largely balance each other out—each practical hurdle for one party in travelling to another jurisdiction to participate in the litigation is countered by the opposing party facing the same hurdle in participating in the alternative forum. But where, as here, the record indicates that Plaintiffs would need to travel to *either* location in order to participate in the litigation, this factor weighs in favor of transfer to Texas.

Compl. ¶¶ 9-10.) The Southern District of Texas is more accessible and convenient for Defendant and presumably for at least one plaintiff, Burch.[11] And, as previously articulated, three of Defendant's witnesses are likely outside of this Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1). For these reasons, this factor favors transfer.[12] *See Jacobowitz v. Range Res. Corp.*, No. 21-301, 2021 WL 2457545, at *6 (W.D. Pa. June 16, 2021) (finding that the second public interest factor favored transfer because the "[d]efendants . . . , as well as the substantial preponderance of material witnesses overall, are located in the [the proposed transferee district forum]").

The Court next finds that the third factor—the relatively administrative difficulty associated with the proceedings in either district—weighs in favor of transfer. In resolving this factor, courts often look to statistics from the Administrative Office of the United States Courts.[13] The District of New Jersey has a significantly heftier caseload than the Southern District of Texas. *See generally* Admin. Off. U.S. Courts, *United States District Courts — National Judicial Caseload Profile* (Dec. 31, 2024), https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_ distprofile1231.2024.pdf. As of December 31, 2024, the District of New Jersey had 83,374 pending cases and 4,904 pending cases per judgeship. *Id.* The Southern District of Texas, on the other hand, had 15,088 pending cases and 794 per judgeship. *Id.* Even further, in the District of

---

[11] Plaintiffs argue that "Texas is an extremely large state" and that "many of [Defendant's] witnesses may, in fact, have to travel by plane to get to the courthouse." (Pls.' Opp'n Br. 14.) But, at the same time, Plaintiffs fail to specify where Burch resides in the "extremely large [S]tate" of Texas. (*See id.*)

[12] Moreover, "this action has been before the Court for a relatively short period of time and, thus, 'a transfer will not significantly disrupt the litigation or result in a waste of judicial resources.'" *Smith v. HireRight Sols., Inc.*, No. 09-6007, 2010 WL 2270541, at *9 (E.D. Pa. June 7, 2010) (quotation omitted).

[13] *See* Admin. Off. U.S. Courts, *United States District Courts — National Judicial Caseload Profile* (Dec. 31, 2024), https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_dist profile1231.2024.pdf.

New Jersey, the average time from filing to trial of a civil case is 60.4 months, whereas the average in the Southern District of Texas is 32 months. *Id.* That said, the backlog of cases awaiting disposition in New Jersey is substantial compared to the Southern District of Texas. A comparison of the relative congestion in the two districts suggests that this action is likely to reach its resolution more efficiently in the Southern District of Texas than in this Court. As such, the third factor supports transfer due to the great congestion this Court currently faces.

The last public interest factor for the Court to consider—the local interest in deciding local controversies at home—weighs in favor of transfer. New Jersey's interest is limited to its position as the site where Plaintiffs "would at times work," whereas Texas is both the site at which the conduct at issue occurred and also where Defendant resides. Plaintiffs are not residents of New Jersey, and "New Jersey's interest is significantly diminished where a plaintiff is not a New Jersey resident." *Halpern v. Centroid Sys., Inc.*, No. 24-7037, 2025 WL 1112847, at *3 (D.N.J. Apr. 16, 2025) (finding that the fourth public interest factor favored transfer where the plaintiff was not a New Jersey resident and the proposed transferee district forum was where "conduct at issue partially occurred and also [d]efendants' domicile"). As such, this factor weighs in favor of transfer to Texas.[14] *See Tennaro-Messina*, 2024 WL 3064895, at *4 ("[The transferee state] has a greater local interest in this case because the central events related to liability occurred there.").

After consideration of the relevant private and public interest factors, this Court finds that transfer to the Southern District of Texas is warranted. The only factor slightly tipping against

---

[14] Moreover, jury duty should not be required of New Jersey citizens when the events giving rise to this case occurred in another state. *See Tennaro-Messina v. Marriott Int'l Inc.*, No. 23-20852, 2024 WL 3064895, at *3 (D.N.J. June 20, 2024) (noting jury duty should be imposed on Florida residents "because the central events related to liability occurred there"); *see also Foster v. Marriott Resort Hosp. Corp.*, No. 17-12901, 2018 WL 3360763, at *3 (D.N.J. July 10, 2018) ("[D]ue to the operative facts occurring in Florida, it would be improper for the burden of jury duty to be imposed on the citizens of New Jersey.").

transfer is Plaintiffs' forum choice. As noted, this factor is given minimal weight because Plaintiffs' chosen forum is neither where the conduct underlying this action occurred nor where Plaintiffs reside. Meanwhile, all other factors are either neutral or weigh in favor of transfer.

### 4.    *Whether the Court Should Grant Plaintiffs' Request for Venue-Related Discovery.*

Plaintiffs request limited venue-related discovery to explore Defendant's corporate presence in New Jersey and the decision-making process surrounding their terminations. (Pls.' Opp'n Br. 13-15.)

The Supreme Court has stated that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). In the context of jurisdictional discovery, the Third Circuit has instructed that "unless a plaintiff's claim is 'clearly frivolous,' jurisdictional discovery should be allowed." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 212 (3d Cir. 2013). A plaintiff, however, may not "undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). Nonetheless, to show that discovery is warranted, a party must, at a minimum, state a non-frivolous basis for venue and do so with "reasonable particularity." *See, e.g.*, *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("[A] mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous.'"); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n.38 (3d Cir. 2015) ("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

Here, the Court finds that Plaintiffs have not identified any specific factual disputes that establish venue discovery is warranted. The record already establishes that Plaintiffs resided and worked in Texas at the time of the alleged retaliatory conduct. (Def.'s Moving Br. 2.) Additionally,

Defendant's principal place of business is in Texas (Casteel Decl. ¶ 2), and the decision to terminate Plaintiffs was made there. (*Id.*) Plaintiffs have not pointed to any facts or provided evidence to suggest "with reasonable particularity" the possible existence of the requisite "contacts between . . . [D]efendant and [New Jersey]." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). As such, granting venue-related discovery would impose unnecessary delays and burden the Court with additional proceedings that would not alter the outcome of the venue determination. Because the relevant evidence regarding venue is already before the Court and Plaintiffs have failed to demonstrate a specific need for discovery, Plaintiffs' request is denied.

### B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Because the Court grants Defendant's Motion to Transfer Venue under Section 1404(a), the Court denies Defendant's Motion to Dismiss under Rule 12(b)(6) as moot. Based on the transfer, the Court will defer Defendant's Motion to Dismiss under Rule 12(b)(6) to the transferee court. *Zeikos Inc.*, 2023 WL 239957, at *7.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Transfer Venue to the Southern District of Texas pursuant to Section 1404(a) is granted, and Defendant's Motion to Dismiss under Rule 12(b)(6) is denied as moot. An order consistent with this Memorandum Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE